# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Melissa H.,

              Plaintiff,

v.

Martin J. O'Malley,
Commissioner of Social Security
Administration, [1]

              Defendant.

Case No. 23-cv-1729 (TNL)

**ORDER**

---

Edward C. Olson, Reitan Law Office, 80 South Eighth Street, Suite 900, Minneapolis, Minnesota 55318; and Karl E. Osterhout (Pro Hac Vice), Osterhout Disability Law, LLC, 521 Cedar Way, Suite 200, Oakmont, Pennsylvania 15139 (for Plaintiff); and

Ana H. Voss, Assistant United States Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415; and Chris Carillo and James D. Sides, Special Assistant United States Attorneys, Social Security Administration, Office of Program Litigation, Office 4, 6401 Security Boulevard, Baltimore, Maryland 21235 (for Defendant).

---

## I.    INTRODUCTION

Plaintiff Melissa H. challenges Defendant Commissioner of Social Security's denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401. The parties have consented to a final judgment from the undersigned

---

[1] The Court has substituted Commissioner Martin J. O'Malley for Acting Commissioner Kilolo Kijakazi. A public officer's "successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name." Fed. R. Civ. P. 25(d).

United States Magistrate Judge in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D. Minn. LR 72.1(c).

Pursuant to the Federal Rules of Civil Procedure's Supplemental Rules governing actions seeking judicial review of the Commissioner's decision, this action "is presented for decision by the parties' briefs." Fed. R. Civ. P. Supp. SS Rule 5. Plaintiff filed a brief, ECF No. 13, requesting the Court to reverse the Commissioner's decision and remand for further review. Rather than filing a brief as provided for in Rule 5, Defendant filed a Motion for Summary Judgment, ECF No. 15, which was the procedure prior to the recent amendment to Rule 5.

For the reasons set forth below, the Court denies Plaintiff's request for relief, grants Defendant's motion, and affirms the Commissioner's decision.

## II.    BACKGROUND

Plaintiff applied for disability insurance benefits in June 2021, when she was 55 years old. Tr. 55. In her application, she asserted that she had been disabled since February 2021, based on compartment syndrome in her left leg, protruding discs in her lower back, and surgery that had been performed on her right elbow. Tr. 55. Plaintiff had been employed at a restaurant but stopped working there in February 2021 because of her impairments. Tr. 204–05. Prior to working at the restaurant, she had been employed as a laser operator at a manufacturing facility. Tr. 212.

The Social Security Administration[2] denied Plaintiff's initial application for disability insurance benefits. Tr. 62. Plaintiff applied for reconsideration of her application, Tr. 86, and the Social Security Administration again denied her claim. Tr. 74–75.

Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). Tr. 97. At the hearing, the ALJ took testimony from Plaintiff and a vocational expert. Tr. 35–36, 51. The ALJ also considered voluminous medical records in preparing her decision. These records included medical records from Plaintiff's primary care clinic and orthopedic providers, as well as a "Physical Medical Source Statement" completed by a Dr. Hoyum three months before the hearing. After the hearing, the ALJ issued a decision denying Plaintiff's claim. Tr. 10–24, 30–54. Plaintiff requested that the Appeals Council review the decision of the ALJ, and the Appeals Council denied her request for review. Tr. 1.

Plaintiff now seeks review by this Court.

### III.   ANALYSIS

Plaintiff argues that the ALJ's decision was not supported by substantial evidence, contending that the ALJ failed to account for the total limiting effects of Plaintiff's impairments. Pl.'s Br. at 1, ECF No. 13. Plaintiff specifically asserts that the ALJ did not properly credit her own testimony and did not have a legitimate medical basis for rejecting the opinion of Dr. Hoyum.

### A.  Standard of Review

---

[2] A Minnesota state agency made the original disability determination on behalf of the Social Security Administration. *See* 20 C.F.R. § 416.1026 (providing funding to state agencies to make disability determinations on behalf of the Social Security Administration).

This Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole. *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* at 103. "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted); *see also*, *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018) (defining "substantial evidence as less than a preponderance but enough that a reasonable mind would find it adequate to support the conclusion" (quotation omitted)).

This standard requires the Court to "consider both evidence that detracts from the [ALJ's] decision and evidence that supports it." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011). The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Id.* "The court must affirm the [ALJ's] decision if it is supported by substantial evidence on the record as a whole." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (quotation omitted).  Thus, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). (quotation omitted).

## B.  Disability Insurance Benefits

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. § 423(a)(1); *accord* 20 C.F.R. § 404.315. An individual is considered to be disabled if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. §
423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). This standard is met when a severe
physical or mental impairment renders the individual unable to do their previous work or
"any other kind of substantial gainful work which exists in the national economy" when
taking into account their age, education, and work experience. 42 U.S.C. § 423(d)(2)(A);
*see also* 20 C.F.R. § 404.1505(a).

Disability is determined according to a five-step, sequential evaluation process. 20
C.F.R. § 404.1520(a)(4).

> To determine disability, the ALJ follows the familiar five-step
> process, considering whether: (1) the claimant was employed;
> (2) she was severely impaired; (3) her impairment was, or was
> comparable to, a listed impairment; (4) she could perform past
> relevant work; and if not, (5) whether she could perform any
> other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). In general, the burden of proving
the existence of disability lies with the claimant. 20 C.F.R. § 404.1512(a).

Before the fourth step, the ALJ assesses the claimant's residual functional capacity.
*Id.* § 404.1545(a)(5)(i). The residual functional capacity is the most work a claimant can
do despite her limitations. *Id.* § 404.1545(a)(1). The ALJ assesses a claimant's residual
functional capacity "based on all of the relevant medical and other evidence." *Id.* §
404.1545(a)(3). If a claimant has a severe impairment, but the impairment is not a listed
impairment, the ALJ must "consider the limiting effects of all [the claimant's]
impairment(s), even those that are not severe, in determining . . . residual functional
capacity." *Id.* § 404.1545(e). To make this determination on the total limiting effects of the

claimant's impairments, the ALJ considers "all of the medical and nonmedical evidence, including the information described in § 404.1529(c)." *Id.*

Section 404.1529(c) applies "[w]hen the medical signs or laboratory findings show that [the claimant] has a medically determinable impairment(s) that could reasonably be expected to produce [the claimant's] symptoms." If that is the case, the ALJ must consider both "objective medical evidence" as well as "any other information [the claimant] may submit about [the claimant's] symptoms." 20 C.F.R. § 404.1529(c). For other information that the claimant submits,

> [b]ecause symptoms . . . are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that [the claimant's] medical or nonmedical sources report, *which can reasonably be accepted as consistent with the objective medical evidence and other evidence*, will be taken into account as explained in [20 C.F.R. § 404.1529](c)(4).

20 C.F.R. § 404.1529(c)(3) (emphasis added). Paragraph (c)(4) provides that the ALJ must "consider" all of the available evidence, including whether there are any inconsistencies in the evidence.

In addition, the Social Security Administration has promulgated rules on how the ALJ considers medical opinions. The ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, the ALJ considers five factors in evaluating the medical opinions: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. *Id.* § 404.1520c(c). The most important factors are supportability and consistency. *Id.* § 404.1520c(b)(2).

For the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). And for the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

## C. Substantial Evidence Supports the ALJ's Determination That Plaintiff Was Not Disabled

The ALJ found that Plaintiff had the residual functional capacity to "perform light work as defined in 20 C.F.R. 404.1567(b) except with frequent stooping, crouching, crawling, and climbing ramps or stairs; no climbing of ladders, ropes or scaffolds, frequent handling, fingering, and reaching bilaterally; avoid concentrated exposure to extreme cold; and avoid exposure to vibration." Tr. at 19–20. To make this finding, the ALJ considered Plaintiff's own testimony as well as the report from Plaintiff's physician, Dr. Hoyum. Tr. 20, 23.

Plaintiff testified that she had disabling limitations from her back and elbow. At the hearing, Plaintiff testified that her pain was mostly in her elbows and lower back. Tr. 38. She stated that standing, sitting, and walking hurt her back and that she frequently has to change positions to alleviate her pain. Tr. 38. She said that she can only stand for 10 to 15 minutes and that she could only walk three blocks out and back. Tr. 40. She also testified

that she had physical therapy for her elbows, but the physical therapy had made the pain in her elbows worse. Tr. 38. She stated that she could only lift two pounds because of the pain in her elbows. Tr. 40–41.

The ALJ rejected Plaintiff's claims, stating that Plaintiff's

> allegations of disabling limitations from her back and elbow impairments are not consistent with or supported by the overall record, including the objective medical findings and observations of medical providers and the course of treatment she has received. She has had minimal to no treatment for her back. With regard to the upper extremities, the records support a frequent limitation in handling, fingering, and reaching, but further manipulative limits are not supported. The record does not document any treatment for shoulder problems during the time period currently under adjudication. The elbow impairments are largely improved following the treatment she has received. As noted above, the lower extremity compartment syndrome is described as resolved, and there is no support for limitations in that regard.

Tr. 21.

The ALJ's findings are supported by the record. First, Plaintiff has sought minimal treatment for her back. Plaintiff visited a clinic on July 20, 2021, for back pain. Tr. 929. She had tenderness in the right para lumbar muscles, decreased lumbar extension, a positive right straight leg raise, and was unable to heel or toe walk. Tr. 932. The physician referred Plaintiff to physical therapy, Tr. 929, but there is no evidence in the record that Plaintiff pursued physical therapy for her back pain. At a routine checkup in December 2021, the physician noted that Plaintiff's gait was age appropriate and that Plaintiff did not have ataxia. Tr. 922. In May 2022, Plaintiff reported that her back pain was worsening because she had started walking. Tr. 1194. The physician told Plaintiff that continued exercise

8

would help her back feel better. Tr. 1194. In short, ample evidence supports the ALJ's finding that Plaintiff sought minimal treatment for her back.

Second, Plaintiff's medical records support the ALJ's finding that Plaintiff's elbow impairments have "largely improved" following her course of treatment. Plaintiff visited a clinic on February 15, 2021, for elbow pain in both of her elbows. Tr. 664–65. Her physician diagnosed her with tennis elbow in both elbows, ordered x-rays of both elbows, and planned to refer her to an orthopedic provider. Tr. 664. The x-rays showed no fracture or dislocation in Plaintiff's elbows. Tr. 875–76. When Plaintiff visited an orthopedic doctor, she received steroid injections in both of her elbows. Tr. 873. At a follow-up appointment, Plaintiff reported significant improvement in her left elbow pain, but she was still experiencing pain in her right elbow. Tr. 868. The physician ordered an MRI of her right elbow. Tr. 869. The MRI revealed a partial tear in a tendon in Plaintiff's right elbow. Tr. 866. In June 2021, Plaintiff underwent surgery to repair the partially torn tendon in her right elbow. Tr. 859. At a follow-up appointment about one month later, Plaintiff reported that she was doing well, had no major pain or discomfort, and did not think she needed physical therapy. Tr. 852.

In August 2021, Plaintiff visited the orthopedic office because her right elbow was swollen. Tr. 905. The physician drained fluid from her elbow. Tr. 906. Later that month, she visited a primary care clinic, where she reported pain in both of her elbows. Tr. 928. In September, an orthopedic physician ordered an MRI for Plaintiff's right elbow. Tr. 900. The MRI showed that a small portion of the tendon in Plaintiff's elbow had re-torn. Tr. 894, 896. Plaintiff discussed the results of the MRI with an orthopedic physician assistant,

and they decided to not pursue further surgery but rather opt for conservative treatment, including physical therapy. Tr. 894.

By November 2021, Plaintiff reported that her right elbow had improved, but her left elbow was still having persistent pain. Tr. 889. An orthopedic physician assistant ordered an MRI of Plaintiff's left elbow. Tr. 890. The MRI showed tendinosis and intrasubstance tearing. Tr. 887. In February 2022, Plaintiff had surgery to repair the tendon in her left elbow. Tr. 1095. Although at her post-operative visit 12 days after the surgery Plaintiff rated her pain as nine out of ten, Tr. 1094, by six weeks after the surgery Plaintiff had a 135-degree range of motion as well as full pronation and supination in her left elbow. Tr. 1163. Notes from physical therapy show that Plaintiff responded well to the treatment she received. Tr. 1136. In sum, the record amply supports the ALJ's finding that Plaintiff's elbow impairments were mostly improved after treatment.

Moreover, the ALJ properly considered and rejected Plaintiff's claims, following the procedure set forth in the regulations. Although the ALJ cannot reject "statements . . . about the effect [the claimant's] symptoms have on [the claimant's] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] symptoms," 20 C.F.R. § 404.1529(c)(2), "an ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quotation omitted). Admittedly, objective medical evidence shows a potential cause of Plaintiff's back pain. Tr. 757 (MRI findings of disc bulges, disc protrusion, and spinal stenosis); Tr. 1061 (MRI finding of cervical disc bulges and impingement of the

10

spinal cord). But Plaintiff's statements that her back pain is disabling is inconsistent with the record, described in detail above, which reflects that Plaintiff did not seek treatment for her back pain. *See Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997) (stating that "failure to seek medical assistance . . . contradicts [a claimant's] subjective complaints of disabling conditions"). And Plaintiff's statements that her elbow impairments are disabling is inconsistent with the record, described in detail above, that her elbows had been largely improved following her course of treatment. Because Plaintiff's subjective complaints could not "reasonably be accepted as consistent with the objective medical evidence," the ALJ properly discredited Plaintiff's statements. 20 C.F.R. § 404.1529(c)(3).

The ALJ also rejected the medical opinion of Dr. Hoyum. The ALJ wrote,

> The opinion at Exhibit 15F from [Dr. Hoyum] is not persuasive or supported. . . . [Dr. Hoyum] opines that [Plaintiff's] limitations have been present since at least February 2021, although she began treating [Plaintiff] in May 2021. There is little support in the record for the extent of limitations that she opines, and the exams do not reveal significant upper extremity weakness post surgeries, or foot/leg swelling, and there has been minimal treatment for the back. While there are references in the recent physical therapy records of a two pound weight limit, this had only been described in [Plaintiff's] self-report (Exhibit 20F/9) and is not otherwise supported by the objective medical exam findings.

Tr. 23.

The ALJ's findings are supported by the record. As noted above, the record supports the ALJ's finding that Plaintiff sought minimal treatment for her back. *See* Tr. 922, 929, 1194. And the record support the ALJ's finding that Plaintiff's elbow impairments were largely improved after treatment. *See* Tr. 852, 1136, 1163.

Moreover, the ALJ properly discredited the medical opinion of Dr. Hoyum, following the procedure set forth in the regulations. The record shows that Dr. Hoyum's report lacks the two most important factors for the ALJ to find a medical opinion persuasive: supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Dr. Hoyum's report opines substantial limitations on Plaintiff's ability to perform work tasks, such as lifting a maximum of two pounds, standing for a maximum of 15 minutes at a time, sitting for less than two hours at a time, lying down at least four times per shift, and absence from work because of impairments more than three times per week. Tr. 1098–1102. But these limitations are neither supported by nor consistent with the objective medical evidence in the overall record. First, the objective medical evidence presented in Dr. Hoyum's report does not support her conclusions. Notably, Dr. Hoyum opined that Plaintiff's limitations began in February 2021, even though Dr. Hoyum stated in her own report that Plaintiff had been her patient only since May 2021. Tr. 1102. And Dr. Hoyum cited to no particularized medical evidence in reference to the limitations she suggested in her report, Tr. 1098–1102, which diminishes the persuasive value of her report under 20 C.F.R. § 404.1520c(c)(1). Second, Dr. Hoyum's report is inconsistent with the objective medical evidence in the record. As described in great detail above, the record reflects that Plaintiff sought minimal to no treatment for her back pain and that her elbow impairment had largely improved following Plaintiff's course of treatment. Because the objective medical evidence in the record is not consistent with Dr. Hoyum's report, under 20 C.F.R. § 404.1520c(c)(2) her report has less persuasive value.

12

In addition, Dr. Hoyum's report lacks persuasive value for other reasons than a lack of supportability and consistency. Assessments have "little evidentiary value" when they "consist of nothing more than vague, conclusory statements—checked boxes, circled answers, and brief fill-in-the-blank responses," and when they "cite no medical evidence and provide little to no elaboration." *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (quotation omitted). Dr. Hoyum's report is a form report consisting of circled answers and short written responses with no citations to particular medical findings, which diminishes the persuasive value of the report.

Substantial evidence in the record as a whole supports the ALJ's finding that Plaintiff's statements and Dr. Hoyum's report were not persuasive. As a result, the ALJ properly accounted for the total limiting effects of Plaintiff's impairments, and substantial evidence supports the ALJ's determination that Plaintiff was not disabled.

## IV.    CONCLUSION

Based upon the foregoing and all the files, records, and proceedings in the above-captioned matter, **IT IS HEREBY ORDERED THAT**:

1.  Plaintiff's request for relief, ECF No. 13, is **DENIED**; and

2.  Defendant's Motion for Summary Judgment, ECF No. 15, is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: September 25, 2024                      */s/ Tony N. Leung*
                                              Tony N. Leung
                                              United States Magistrate Judge
                                              District of Minnesota

                                              *Melissa H. v. O'Malley*
                                              Case No. 23-cv-1739 (TNL)

13